United States District Court
Middle District of Georgia
Macon Division

RECEIVED
CLERK'S OFFICE
2013 DEC -2 AM 8:29
U.S. _____ ____
MIDDLE _____ GEORGIA
MACON, GEORGIA

| | |
|---|---|
| Reginald Kelly, petitioner<br><br>v.<br><br>Donald Barrow, Warden<br>Washington State Prison,<br>Respondent | Prisoner Habeas Corpus<br>28 U.S.C. 2254<br><br>Case No:<br><br>**5:13-CV-451** |

## Petitioners Brief

### Part One:

### Background & Proceedings Below

After more than five years of incarceration, Reginald Kelly, submits his writ of Habeas Corpus based on the denial of his sixth amendment right to a fast & speedy trial. Although (1) Much of the delay was either attributable to the state or unexplained, (2) He asserted his speedy trial right over four years ago (3) He has been unable to work in the interim, and (4) he lost the opportunity for a concurrent sentence, the trial Court balanced the scales against Kelly. He now asks this Court to grant the great writ, because, not only has his prosecution passed the point of no return, the government took the wrong road to find otherwise.

I. Procedural Statement

On December 7, 2011, Kelly filed pro-se, a plea in bar in the Newton County Superior Court, and this plea was adopted by counsel on March 20, 2012, asserting that the delay since his August 2008 arrest violated his sixth amendment right to a speedy trial[1] (TAB 35) The trial court orally denied Kelly's plea on March 26, but did not file a written order until July 17, 2012      Kelly filed his notice of appeal on April 19, 2012 and his case was docketed on August 2.

The petitioner will make references to the record by using an index of the case, Exhibit A, all other references will be noted as Exhibit B thru Z and tab 1 thru 60.

[1] The record in Kelly's case spans two docket numbers from Kelly's previous appeals. A11A0450 and A12A2422

## II. Factual Statement

Kelly's more than 62 month journey through the Newton County court system began in the summer of 2008. Following a series of controlled buys and unconsented video surveillance[3], City of Covington – Newton County Drug Task Force officers arrested Kelly on August 28 and charged him with offenses related to the possession and sale of cocaine[4] ( TAB 4 ) A grand jury indicted Kelly on November 12, 2009, and the prosecution filed several notices. These included notice that it intended to present similar transactions and a demand for reciprocal discovery.

---

[3] The subject of a motion to suppress, Newton County officers sent informants into Kelly's house with video cameras, without first obtaining a warrant or permission ( )

---

[4] In addition to Kelly, officers arrested and charged three others: Reginald Kelly JR., Robert Kelly and Angel Allen ( TAB 15 )

A. January 2009: Arraignment and Kelly's first lawyer

Kelly appeared in court just after New Year's (tab 5) He was on the calender for an arraignment and a probation Revocation hearing (tab 5). For the probation revocation, which was based on the same charges as his arrest and indictment, Kelly's lawyer was Terry Massey (Tab 5) The court Revoked the balance of Kelly's probation[5] (Tab 5) Since Massey's representation did not extend to the new charges, Kelly's lawyer for arraignment was Erica Arena from the Public Defender Office (tab 5) Kelly pleaded "not guilty" (tab 5)

---

[5] Kelly served the balance of his probation well before the trial court heard the plea in bar that led to the appeal on case no. A12A2422 (tab 41) The Ga. Dept. of Corrections, Kelly, Reginald Tyrone, GDC — 0000563275, http://www.dcor.state.ga.us/BDc/offender Query/jsp/OffORy Redirector.jsp (Sept. 19, 2012)

After arraignment, Kelly filed several motions on his own, including a demand for speedy trial on sixth Amendment grounds. Arena filed blanket motions, but nothing particularized because, she never spoke to Kelly at arraignment, or visited him in the county jail. Kelly filed his particularized pro-se motions, i.e demand for trial to protect his rights. Over 17 months later at Kelly's first plea in bar hearing (tab 30) Arena admitted a conflict of interest between Kelly and his Codefendant/Uncle, Robert Kelly, whom she also represented (tab.30) Arena also represented Robert Kelly during his arraignment, which occurred on the exact same date as Kelly's arraignment, only moments before. Arena knew immediately that a conflict existed, it is unclear from the Record why she waited months later to declare a conflict. Kelly, who was serving his revoked probation sentence, pursued discovery on his own from prison. His pro-se motions ceased when his second lawyer, Charles Barrow was appointed.[6]

B. April—September 2009: Barrow represents Kelly ~~because of a conflict~~

Shortly after Barrow's appointment, Kelly appeared on the court's calendar. (tab.37)

---

[6] The record does not indicate exactly when Barrow took over Kelly's defense, but he began filing motions in April 2009, after Kelly was produced back from prison, when Kelly and Barrow met for the first time. (Tab.16)

Kelly was in prison, though, and the motions hearing was continued three weeks to April 22 so he could be produced.[7] (tab 30) Barrow re-iniated discovery in the meantime. (tab. 16) He also moved for disclosure of Brady material and any surveillance of Kelly (tab 16, 20) Kelly resumed filing in late July. (tab 19) And in late August, he filed a petition for writ of mandamus based on the state's failure to try him within two terms of his post-arraignment statutory demand for speedy trial. (tab 21) Barrow stayed on until fall, when Kelly's third lawyer, Stephen Coxen, replaced him.[8] (tab. 23) Barrow also asked to suppress Kelly's statements, as well as any evidence the prosecution obtained through illegal video. The day

---

[7] Other than the March 26, 2009 production order, there is no record of the April 22 motions hearing. (tab 14)

[8] The record contains no motion to withdraw from Barrow, nor did Barrow testify at any of the pretrial hearings. The only explanation for Barrow and Kelly ending their relationship came from the prosecution's comments. (tab 37)

Coxen filed entry, Kelly's motions again appeared on the courts calender for a hearing. (Tab 23, 24) Because of Coxen's recent appointment, the Assistant District Attorney consented to a Continuance. (Tab 23)

## C. September 2009—September 2010: Coxen takes over Kelly's defense.

Coxen resumed attacks on the prosecutions evidence. In October, he filed motions to discover who the confidential informant was and whether the state had made any deals with any potential witnesses. (tab. 25) He also Amended Barrow's motion to suppress (Tab 24)

## 1. November 24, 2009 Kelly's motion to Suppress hearing.

The tuesday before Thanksgiving, the trial court heard Kelly's motion to suppress Videotape evidence. (Tab 25) Finding that he had been illegally taped, the court suppressed the video evidence, but allowed any evidence not based on the video (tab. 25, 31, 55) There was debate whether that covered Kelly's statement after his arrest (tab. 25)-14,15). The court could not determine this because officers had not transcribed Kelly's summer 2008 statement before his fall 2009 hearing. (tab 25)13-14, 62-63). It instructed the prosecution on how those delays could be avoided—suggesting that if the officers could get [not] the interview transcribed, the District Attorney's office should free up a secretary to do it. (tab 25)14-15, 30,59) At the end of the hearing, the court asked about Coxen's pending

motions to Reveal the deal and the informants identity. (Tab 25) 56, 59). The prosecutor responded that he would give Coxen information about deals, if there were any, ten days before trial, and that it did not know the names of the informants (Tab 25) 56, 59-60). Again the court questioned the prosecutors timing. (tab 25) 57-62). The purpose of a motions-status hearing, it said was to correct for delay caused by waiting until ten days to trial before turning over evidence. (tab 25) 57) Since there was still outstanding evidence and the prosecution was unprepared to address Coxen's other motions, the court continued Kelly's case. (tab 25).64) It also denied Kelly's pro-se motions (tab 25) 33-39) At the time Kelly's case was not set for trial. (tab 25) 33)

2.   December 2009—July 2010: Coxen moves to withdraw and the court questions Kelly's Competance.

At the end of 2009, Coxen adopted Kelly's post arraignment demand for speedy trial (Exhibit M) He argued that the state had failed to try Kelly with-in two terms of his original demand and that the indictment should be dismissed (Exhibit N, tab 26) Then at the start of 2010, Coxen asked Judge Ott, who had been presiding over the case, to recuse himself (Exhibit-O, tab 26). The court declined to recuse itself four days after filing (tab 27 Exhibit-O) But would not hear the speedy trial demand for almost eight months (tab 30 p.23). Coxen meanwhile moved to withdraw as counsel, citing difficulties with Kelly (tab 28 p 2,10) Kelly was produced from prison for the hearing. Lawyer and client noted their disagreements about how the case should proceed. (tab 28 p.3, 4)

After confirming that Kelly's case was still not set for trial, the court left Coxen on the defense (tab 28 p. 4-8, 11) It indicated the result might have been different if Kelly was attempting to fire Coxen. (tab 28, p. 8-9) He was not (tab 28 p-9) And so the court admonished Coxen to follow Kelly's instructions and Kelly to work with his lawyer. (tab 28 p 9, 14-15) The court also ordered a psychological evaluation of Kelly (tab 28, p 11). Kelly later objected on fifth amendment grounds, and the Court withdrew that order in July, advising Kelly that he could not use his mental health as mitigation or a defense.

3. <u>August 17, 2010: Kelly's Motion to dismiss hearing</u>
The court heard Kelly's December motion to dismiss on speedy trial grounds in August (Exhibit N tab 26 p. 2, 23). Despite Kelly's first lawyer having a conflict of interest, the trial court ruled that his initial demand was invalid. (p. 23-24, 31-32, 35-38, 46) The court filed its order on August 30, 2010: conflict or not, because Kelly was represented in January 2009, his demand for speedy trial did not count. (tab 30) Kelly appealed two weeks later (tab 31 Exhibit G )

4. <u>September 2010 — July 2011: Kelly's first appeal</u>.
Kelly's case was on appeal for almost a year. At the end of June 2011, the Ga. Court of Appeals affirmed the trial court's ruling. Kelly v. State (A11A0450)(June 30, 2011)

D. September 2010 — July 2012: Kelly's sixth Amendment plea in bar.
After Kelly's case was remitted, the prosecution filed a second notice of intent to present—

similar transactions (tab. 45) three months later, Kelly followed with the plea in bar (The basis for his last appeal, Case No: A12A2422) asserting his sixth amendment right to a speedy trial. (tab 35)(Exhibit F) The court would not address either motion until Spring. (tab. 37)

1. March 2012: Coxen moves to withdraw; the state files pretrial notices.

Kelly's case was set for trial on March 26 2012.[9] Two weeks out, however, Coxen filed a second motion to withdraw as counsel — this time saying Kelly wanted to dismiss him. Then ten days before trial, the state served Coxen with a second notice of intent to offer evidence in aggravation of Kelly's punishment and a witness list. The outstanding motions were set for a hearing the week before trial (tab 36 p.2) After hearing from the state that Kelly had rejected their latest offer, the court turned to Coxen's motion to withdraw (tab 36 p. 3) Kelly indicated that the problem was Coxen's refusal to file a plea in bar based on his sixth Amendment right to a speedy trial. (tab 36 p. 3-4) Coxen however did not agree with this strategy (tab 36 p. 4,5,8) The court resolved the dispute by directing Coxen to adopt Kelly's plea in bar, which he did later that day. (tab. 36 Exhibit M)

---

[9] This is the only order in the record placing Kelly on a trial calendar. (March 26, 2012)

(10)

2. <u>March 26, 2012: Kelly's speedy trial hearing.</u>

The court heard Kelly's plea in bar the follow-
ing Monday. (tab 37 p.1-2) At that hearing, the prosecutor
contended that the delay since Kelly's August 2008 arrest
was not uncommonly long, but admitted there were
cases that suggested otherwise. (tab 37 p.5) It then
argued that the delay was Kelly's fault: that Kelly
filed pro-se motions, that Kelly appealed his motion
to dismiss, and that Kelly had not cooperated with
his lawyers. (tab 37, p. 8-10) Further, though there were
previous assertions in the record, it was the pros
ecution's position that Kelly had not timely asserted
his right to a speedy trial. (tab 37, p.10-11) Only the most
recent demand, was legitimatized by Coxen's filing it.
(tab 37 p.10-11) Finally, the prosecutor noted that
Kelly could not argue that a deceased witness prejudiced
his case in light of his admissions to officers when he
was arrested. (tab 37 p. 11-12) Other than referencing
the clerks record, the prosecution offered no evidence
of the reasons it gave for the delay or how the reas-
ons it gave postponed Kelly's trial. Coxen responded
on Kelly's behalf (tab 37, p. 13-14) He argued that there
were disputed issues of fact and Kelly was entitled
to a jury trial on his plea. (tab 37, p. 13-14) The court
disagreed (tab 37, p. 14-15) Because Kelly did not want
to take the stand on this matter, and the court
would not allow counsel to proffer to the court his
questions or issues of fact, without specific, affirmative
assertions directly from Kelly, it ruled, it would acc-
ept the prosecutors account. (tab 37, p. 15-16) Coxen
went on to address the sixth amendment factors
(tab. 37, p. 16-23) First, the roughly four year delay
since Kelly's arrest, he argued, was both presump-
tively prejudicial and uncommonly long. (tab 37 p. 16-17)

Second, Coxen contended that "vast chunks of those four years [were not] attributable to [Kelly]" specifically, the part of the delay associated with Barrow's appointment. (tab 37 p 17-18, 21) The court stopped Coxen here and explained that the actions of the public defender's office—even related to conflicts—were attributable to Kelly, not the state. (tab 37 p 18-20). Coxen countered that Kelly was not responsible for the governments delay and the government was broader than just the prosecution (tab 37, p 20) He also argued that the court could not hold Kelly responsible for the mental health evaluation. (tab 37, p. 20) The court rejoined that it had a duty to investigate Kelly's mental problems (tab 37, p. 20-21) Third, Coxen contended that Kelly's pro-se filings, though invalid as motions, should count as an assertion of the right (tab 37, p. 21-22) Fourth, Coxen explained that Kelly was prejudiced because now deceased witness would have exculpated him (tab 37, p. 22) Again, the court cut Coxen off, asking whether the witness had ever made that statement to police (tab 37, p. 23). In the end, the court denied Kelly's plea in bar from the bench (tab 37, p. 24-26) Kelly filed his notice of appeal on April 19 (tab 38 Exhibit-P) But the trial court did not file its order until July 17, 2012 — three years, ten months, and 20 days after Kelly's arrest (Exhibit B) After the hearing but before the order, Coxen represented Kelly one last time. (tab 41, p. 2-8) Because his probation had run, Kelly asked for bond, in this case. (tab 41, p. 2-8) The court denied his request (tab 41 p 7-8) On January 18, 2013 Kelly latest appeal was dismissed (Exhibit-F) Kelly has now been incarcerated without trial, 4 years, 6 months and 20 plus days.

10  The trial courts final order preserves all of Kelly's enumerated errors — that the trial courts final ruling was wrong and that it made factual and legal errors in reaching its conclusion. O.C.G.A § 5-6-34(a)

Part two:
Jurisdictional Statement + Enumeration of Errors

I. <u>Jurisdictional Statement</u>

The basic doctrine, the same claim that is sought to be presented to the state courts, giving those courts the first opportunity to consider claim.

State custody – Remedies in Federal courts.

"(a) The Supreme Court, a justice thereof, a "circuit judge", or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgement of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

See Picard v. Connor, 404 U.S. 270, 92. S. ct. 509, 30. L Ed. 438 (1971) "Once the Federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied, at 275. (Ex-Q)

The filing of a state habeas corpus action is not necessary in the exhaustion of state remedies. Goodine v. Griffin, 309 F. Supp. 590 (S. D. Ga. 1970)

II. <u>Enumeration of Errors</u>

Kelly raises three errors on Habeas Corpus Petition

1. The trial court wrongly denied his plea in bar by finding that the three year, ten month, 20 day delay since his arrest did not violate his sixth amendment ~~Right to a speedy trial;~~

2. In reaching that conclusion, the trial court made factual findings unsupported by the record; and

3. The trial court misapplied the law in analyzing whether the government had denied Kelly's Sixth Amendment right.

Part Three:

## Argument + Citation to Authority

The heart of the speedy trial right is fairness. Given enough time, every prosecution will reach a point of no return—some point beyond which it is fundamentally unfair to try the defendant. U.S. Const. Amend. VI, XIV, § 1. See Smith v. Hooey, 393 U.S. 374, 377-78 (89 S Ct 575, 21 LEd 2d 607)(1969). Because that point varies from case to case, we cannot draw a line in the sand or set a timing switch. Barker v. Wingo, 407 U.S. 514, 522-30(III)(92 S Ct 2182, 33 LEd 2d 101)(1972). Instead, courts must weigh different factors to determine whether, in the balance, the delay prejudiced the defendant. Id. at 530-33(IV); Doggett v. United States, 505 U.S. 647, 651-58(II-III)(112 S Ct 2686, 120 LEd 2d 520)(1992); Ruffin v. State, 284 Ga. 52, 55-65(2)(663 SE 2d 189(2008).

The weighing takes two steps. Id. In step one, we ask whether a nearly five-year delay is presumptively prejudicial. Doggett at 651-52(II); Barker at 530-31(IV); Ruffin at 55(2)(a). Step two requires the courts to "delicately" balance the four "context-sensitive" factors from Barker and Doggett: (a) whether the delay in Kelly's case was uncommonly long, (b) whether the government or Kelly was more responsible for that delay, (c) whether (the) Kelly asserted his right to a speedy trial in due course, (d) whether Kelly was prejudiced by the delay. Doggett at 651-58(II-III); Ruffin at 56(2)(b); see Barker at 530-33(III).

In most cases, the state appellate court's defers to the trial court once it has taken these steps and will reverse only if it has abused its discretion. Johnson v. State, 313 Ga. App. 895, 898(723 SE 2d 100)(2012). Here,

though, the trial court misstepped — making both factual and legal errors. ■ Those errors "diminish""the deference owed [its] ultimate Ruling" Id. (citations omitted). And this court can only affirm that ruling if it finds that "had the trial court used the correct facts and legal analysis, it would have had no discretion to reach a different judgment." State v. Pickett, 288 Ga. 674, 680(2)(d)(706 SE 2d 561(2011)

Considering the number of facts the court excluded, the wrong weighing of the facts it did consider, and the "substantial discretion" it has when correctly applying the Barker—Doggett factors, Pickett at 679(2)(d), quoting Porter v. State, 288 Ga. 524, 533(e) (705 SE 2d 636)(2011), it is difficult to imagine the proper analysis requiring the denial of Kelly's plea in bar. On the contrary, since the trial court wrongly weighed three of the four Barker—Doggett factors against Kelly, the proper analysis required the court to grant the plea. It thus abused its discretion by holding otherwise.

I. Kelly's nearly five year incarceration
   is presumptively prejudicial.

Taking the Barker—Doggett steps one at a time, we start with the length of the delay. The time from Kelly's arrest on August 28, 2008 to the trial court's denial of his plea in bar on July 17, 2012 was three years, ten months, and 20 days. (tab 37 p.5 Exhibit M) See Salahuddin v. State, 277 Ga. 561, 562 (592 SE 2d 410)(2004)( The relevant interval is from

the arrest date until the plea in bar was denied).
As the trial court found, this was presumptively
prejudicial and required the move to step two.
(tab 37 Exhibit 37) See Ruffin at 55(1)(a) ("One year
generally marks the point [when] expected deliber-
atness... turns into presumptively prejudicial
delay.")

II.  The trial court misapplied the Barker-
     Doggett analysis.
     Step two—weighing and balancing the Barker-
Doggett factors—was where the trial court
found Kelly wanting. The problem is that
the court put some facts on the wrong side
of the scale and left others out of the
balance altogether.

A.  The unreasonably long delay weighs against
    the Government.
     As to the first factor, the trial court
Rightly weighed the length of delay against
the State. (tab 37) Kelly has been incarcerated
since his arrest (tab 41) Four years, six
months and 20 plus days "is an exceptionally
long time to keep a presumptively innocent
person in jail on the strength of nothing
more than a grand jury's finding of
probable cause". Ruffin at 57(2)(B)(i).

B.  The trial court wrongly calculated the
    Reasons for the delay.
     The second factor puts the burden on
the State to explain who was responsible for
that delay — Kelly or the government. Id. at 60
n40 (citations omitted). Delays fall into several weight

classes. Delay designed to "hamper," "harass" or "coerce the defendant weigh heavy against the government Id. at 59 (2)(b)(ii). Defendant engineered delay, on the other hand, falls to the opposite side of the scale. Id. Most delay, however, lands somewhere in between. Delay inherent in the criminal process, like the time "to decide motions and appeals in a just and thoughtful manner" is new trial unless inappropriately protracted. Id. at 60. Systemic delay tallies in the State's column, as does delay that goes unexplained Id. at 60-61. 61 n 40.

The court here reckoned that the lag between arrest and trial was Kelly's fault. It blamed Kelly for the "bulk of the delay" saying he "repeatedly changed...counsel" he "was repeatedly unwilling to cooperate with... appointed counsel, and that he was responsible for the continuances and delays necessary to allow new attorneys to acquaint themselves with his case." (tab 37) Beyond this, the court directed Kelly to submit to a psychological examination, then faulted him for exercising his right not to comply with it. (tab 37)

Instead of focusing only on Kelly, the court should have looked at the entire period for both what happened and how it might have postponed the trial. See e.g. Davis v. State, 308 Ga. App. 843, 846-47 (2)(c)(709 S E 2d 343)(2011). From the correct vantage, Kelly's counsel changes, his motions, and the court's orders had little to do with the delay — even if they counted against him. Looking closer, much of the delay sprang from the state's lag in providing discovery and not litigating it's own

pretrial matters. But the biggest stumbling block was that Kelly's case did not appear on a trial calendar for more than three years.

**1. (either) Any delay from changing lawyers was either wrongly weighed against Kelly or unsupported by the record.**

The record does not support the court's findings about Kelly's changing counsel. To start, Kelly has had three attorneys, not four as the court noted (Arena, Barrow + Coxen) At his arraignment, Kelly's attorney was Erica Arena from the Public Defender's Office. (tab 5) Terry Massey, referenced in the court order, only represented Kelly on his probation revocation, a separate matter (tab 5)

Arena represented Kelly until February 2008, when she declared a conflict of interest. Since Barrow took over Kelly's defense because of that conflict, the court was wrong to hold this change against him. See Ruffin at 60(2)(b)(ii). Kelly was entitled to conflict-free counsel, and it was the government's responsibility to provide it for him. Id. at 61-62. He cannot be held responsible for delay associated with the government finding a conflict-free lawyer. Id.; Johnson v. State, 313 Ga. App. 895, 902 n 39 (723 SE2d 100) (2011) ("Any failure of the indigent defense system to represent its clients is directly or indirectly the responsibility of the state and the trial court to oversee the functioning of the criminal justice system.")(citations omitted).

As for the change from Barrow to Coxen, the prosecutor thrice asserted that Kelly was suing Barrow over an improper relationship with

the District Attorney's Office (tab 37) But there is neither testimony nor a pleading to support it. The record contains no complaints from Kelly nor motions to withdraw as counsel from Barrow. It was accordingly improper for the trial court to take the prosecutors word without evidence. See Johnson at 902 (It was improper for the trial court to accept the state's explanation for the delay without supporting evidence.) See also Davis at 846–47(2)(c)( The trial court erred by making factual findings about the reason for the delay that were unsupported by the record.)

Moreover, even if the change from Barrow to Coxen should count against Kelly, it only accounts for two and-a-half months. Coxen took over Kelly's defense on September 15, 2009 (tab 23). Because Coxen needed time to familiarize himself with the case, the prosecutor agreed to continue the pending motions. (tab 23) When Kelly's case next appeared for a motions hearing, November 24, 2009, Coxen was ready to go. (tab 25)

As for Coxen, the trial court was correct that he twice requested to withdraw as Kelly's counsel. (Tab 28, Tab 36). It did not explain how those requests hindered Kelly's trial, though. (tab 37) When Coxen made the first request, the state still had motions pending and the case was not on a trial calendar. (tab 37)(tab 45) Nor was there any delay necessary to find a new attorney because the court left Coxen in the case. (tab 45) See Davis at 846 (2)(b)(The trial court erred in attributing delay to Davis's "bench warrant status" or his using another name where there was no evidence that those factors contributed to that delay.) Coxen's second request came

two years later (tab 45) Kelly's case was set for trial at this point, but the court heard the request in conjunction with the state's three year old motion to admit similar transactions."[11] While the court agreed that Kelly could represent himself if he wanted to, it did not grant him any additional time to hire a new lawyer or prepare. (Tab 45) In fact, the court insisted that the trial happen next week regardless. (tab 45) So again, there was no evidence connecting the motion to withdraw with any delay. See Davis.

   2. _Kelly's pro-se motions did not delay his trial._
   In addition to charging him with being uncooperative, the trial court cited Kelly for delaying the trial with his pro-se motions. (tab 37) Kelly did file pro se motions. But recognizing that pro-se motions have no legal effect when a defendant has counsel, Earley v. State, 310 Ga App 110, 112-13 (1)(712 SE2d 565)(2011), the court took only a moment to dismiss them (tab 25) There were no hearings on those motions, nor did the prosecution respond to them. So the trial court was wrong to find that they affected the timing of Kelly's trial. See Davis.

---

[11] The State filed its notice of intent to present similar transactions twice: once in November 2008 and once in September 2011. (tab 6, tab 45)

Twenty
(20)

3. The court's mental evaluation order should
   <u>have weighed against the government.</u>

The final source of delay weighed by
the court was its own order for Kelly to
submit to a mental evaluation (tab 29) It
complained when Kelly declined to submit to
that evaluation — saying that it caused a two
month delay. (tab 45) That finding has two
flaws. First is that the court's actions are
attributable to the government, not Kelly.
See Ruffin at 61(2)(b)(ii)( The relevant inquiry
is whether the government, including trial
and appellate court judges, or the defendant
is more responsible for the delay.) Second is that,
even if Kelly could be held responsible even part
of that for not complying, there is no basis to
find that it took more time than his sub-
mitting to the order would have, and it certa-
inly took more time than no order at all.

4. <u>The delay from Kelly's first appeal was neutral.</u>
   As the trial court pointed out, part of the
delay in Kelly's case was the result of an appeal
to the Court of Appeals following the denial of
his motion to dismiss on statutory speedy trial
grounds (Exhibit G) Because the "appropriately limi-
ted" time necessary for "trial and appellate courts...
to decide motions and appeals in a just and
thoughtful manner" is "truly neutral," this time
does not weigh against Kelly. Ruffin at 59-60.

5. The trial Court failed to consider delay
   attributable to the Government

Adding to the trial court's unsupported
findings are the facts it did not weigh at all.

In November of 2009, Kelly's case appeared
for a motions hearing, the court began to address
Kelly's motion to suppress based on illegal video
surveillance (tab 25) When the hearing approached
issues regarding Kellys police interrogation, though,
the court had to stop (tab 25) Since the prosecution
had not transcribed Kelly's statement to officers,
the court could not determine whether it flow-
ed from the illegal videotaping or if it was
independent. (tab 25)

Beyond not having the tape transcribed,
the prosecutor was not prepared to address
Kelly's other motions, particularly his motions
to reveal the deal and the informants ident-
ity. (tab 25) Though the prosecutor was aware
that witnesses in Kelly's case had been paid, it
did not intend to disclose that information
until ten days before trial (tab 25) It also did
not know the name of its informant, though
it intended to provide that ten days before
trial too. (tab 25)

The court disapproved of the prosecution's
plan to wait until the statutory deadline (tab 25):
O.C.G.A. § 17-16-4(a). The purpose of Kelly's motion-
s—status day, it explained, was to resolve all
pre-trial concerns and prevent last minute del-
ays (Tab.25) Still, at the end of the hearing,
the prosecution's year old notice of intent to
present similar transactions was still pending.
And it stayed pending for nine months further,
despite Kelly's case appearing on the calendar

three more times — including the continuation of the Jackson-Denno concerns from the November 2009 hearing — before — the court denied his statutory speedy trial motion.[12] (tab 30). The trial court should have tallied this time against the government. See Barker at 529 (The burden is on courts and prosecutors to bring the case to trial.); See also Johnson at 901-02.

Plus, the court did not tally the seven-and-a-half months between Kelly's December 2009 motion to dismiss and the hearing on that motion (tab 26     ), the time it took to ferry Kelly back and forth to prison for his hearings, the delay from failure to promptly transport Kelly (tab 37), or the nearly four-month delay between its oral ruling and its written ruling denying Kelly's plea in bar (tab 37) See Ruffin at 59-60.

Still, most telling is that in nearly five years, Kelly's case only appeared on one trial calendar. Other than the neutral time that Kelly's motion to dismiss was before the Court of Appeals of Ga. (Exhibit G), there is no evidence connecting his actions with a court date more than three years after his arrest (tab 5, tab 25, tab 37) So the trial court erred in weighing the second Barker—Doggett factor against him. See Ruffin at 61-62(2)(b)(ii). On the other hand, even if some of the delay could be laid at Kelly's feet, because "the trial court...

---

[12] The notice of intent to present similar transactions was still pending in August 2010 when the prosecution announced it was ready for trial.

did not elaborate on how [Kelly's actions] contributed to the delay," Davis at 846 (2)(b), and because it " neglected to consider... any other portion of the delay which might... be attributable to the State," Johnson at 901(2)(b).

C. <u>Kelly asserted his right to a speedy trial in due course.</u>

The third factor asks whether Kelly asserted his right to a speedy trial in due course. Doggett at 651; Ruffin at 63. There is no rigid requirement that Kelly assert his right before a particular time. Barker at 527-28. Rather, we look at all the circumstances — including whether a "defendant knowing fails to object from a situation in which his attorney acquieces in long delay" as well as "the frequency and force of the objections" — to see whether Kelly intended to waive the right. Id at 529.

The trial court counted Kelly's March 20, 2012 plea in bar as his first, formal assertion of the right. (Tab 36 Exhibit M) But Kelly asserted his desire to be tried as early as 2009 (tab 9 — Exhibit N) These were either pro-se motions made when he was represented (tab 9 Ex. N) or statutory demands (tab 26 Exhibit 9) Plus, Kelly openly objected to Coxen's refusal to raise the sixth Amendment issue (tab 45). Since Kelly made the demands independent of counsel, they were not sufficient to trigger court action. Jackson v. State, 272 Ga. 782, 785 n.13 (534 SE2d 796)(2000) (statutory demands); Johnson at 903-04(2)(c)(pro se demands). They were, however, part of the circumstances the court should have considered in determining whether Kelly had asserted the right in due course. Barker at 27-29.

Twenty-Four
(24)

All the same, even a late demand is not dis-positive. And the rise or fall of any single Barker-Doggett factor does not make or break Kelly's case. See Barker at 533 (IV); Ruffin at 56(6). What is more, this court has found denials of defendants' speedy trial rights even where their assertions come relatively late in the game. See Jones v. State, 283 Ga. App. 838, 840 (3)(642 SE2d 865)(2007) (Right not asserted until three years after arrest); Hardeman v. State, 280 Ga. App. 168, 171-72(5)(633 SE2d 857)(2006) (18 months); State v. Allgood, 252 Ga. App. 638, 640(3) (556 SE2d 857)(2001)(four years). Now, the question is whether, under the diminished deference owed to the trial court in light of it's failure to consider all the relevant circumstances, it gave this factor the proper weight and balance in context. Pickett at 680; Johnson at 898. In that light, it is difficult to say that Kelly's frequent demands did not "constitute some notice to the [State] that Kelly was asserting his right to a speedy trial."(Tab. 45) Redd v. State, 261 Ga. 300, 301 (404 SE2d 264)(1991). In its order denying Kelly's plea in bar (Exhibit B). The state ackno-ledges a valid assertion of the right on March 20, 2012. [Exhibit B] One year later Kelly has still not been tried. His assertion of the right can no longer be disputed.

D. _The delay prejudiced Kelly._

The final factor is prejudice. Under the Barker-Doggett analysis, prejudice takes three forms: oppressive incarceration, anxiety and concern, and impairment of the defense. Barker at 532; Ruffin at 65. When a trial is delayed, though, prejudice is not always "specifically demonstrable" Doggett at 655 (111)(A); Ruffin at 65(2)(b)(iv). Nor does Kelly necessarily have to provide "affirmative proof of particularized prejudice" Id.

In its order, the trial court focused only on whether a witness Kelly intended to call was deceased. (Exhibit B) At the plea in bar hearing, Kelly argued that a now deceased witness Jerome Goodwin, would have exculpated him by claiming the drugs in his case. (Tab 37) The court discounted Kellys argument, finding that Goodwin would not have exonerated him, and the prosecutor said that Kelly specifically exonerated Goodwin when he was arrested. (Tab 37) True, Kelly did not provide the court with a death certificate, and Goodwin's potential testimony was not preserved. (Tab 37) But neither was Kelly's earlier statement put into evidence [13] (Tab 37); see Davis at 846-47(2)(b). Nor was this the only potential source of prejudice. The court failed to consider the effect incarceration has had on Kelly. As Kelly put it early on, extended

---

[13] Even if the evidence was properly in the record, the court applied the wrong standard to Goodwin's potential testimony. (Tab 37, 45); See Ditman v State, 301 Ga. App. 187, 196 (2 Xd)(687 SE2d 155 (2009). The question was not whether the trial court believed Goodwin's statements, but whether they would be material. Id. quoting Hardeman at 174(4)(" In this matter, where the credibility of witnesses would have played a pivotal role, "it is inconceivable that this evidence would not have been material."

incarceration subjected him to financial ruin. (mandamus) He has been unable to work as a barber [14] (tab 41)

The fiscal impact of incarceration is prejudiced too. Ruffin at 64(2)(b)(iv), quoting U.S. v. Marion, 404 U.S. 307, 320 (92 S Ct. 455, 30 L Ed 2d 468)(1971). And the trial court compounded that prejudice when it denied Kelly's bond in May. (tab 41)

More to the point, that Kelly was committed on a probation violation does not mitigate the prejudice, it adds to it. Hooey at 379 ("There is reason to believe that an outstanding untried charge (of which even a convict may of course, be innocent) can have fully as depressing effect upon a ~~prisoner~~ (person) who is at large") See Ruffin at 57-58(2)(b)(i). First, neither the legitimacy of Kelly's probation revocation nor the sufficiency of the prosecution's evidence is before this court. See Ruffin. Second, Kelly denied the charges against him in January of 2009 (tab 5), and there is no record that he has been tried since. See Id. Third since the probation revocation has run, Kelly has "forever lost" the opportunity for a concurrent sentence in this case. Hooey at 379; see Strunk v. United States, 412 U.S. 434, 437-38(II) (93 S.Ct. 2260, 37 L Ed 2d 56)(1973). And under current practices, the pendancy of these charges, likely affected the conditions under which he served his revoked sentence. Hooey.

---

[14] Though Kelly's employment was not discussed at his plea in bar hearing, it was at his bond hearing — two months before the court issued its ruling. (tab 41)

Furthermore, since the dismissal of Kelly's appeal, (Exhibit F) The government has not reassigned Counsel since the closing of the case by appellate counsel, (Exhibit H) The denial of Counsel after Four years, six months and 20 plus days is extremely prejudicial. (1) Kelly is suffering severely while confined without counsel. (2) Kelly does not have a clue about the future of this case or his life, and this fact causes him great anxiety and concern, and (3) There is no way possible for him to proceed in this case without the assistance of Counsel." Strickland v Washington (1963) Doggett v. United States (1992) Barker v. Wingo (1972) and Amend 6, U.S. Constitution.

The Court correctly found that the delay was presumptively prejudicial (TAb 37) but it erred by not considering other sources of prejudice the delay had on Kelly. That error only diminishes the court's deference further, Pickett at 680; Johnson at 898.

## E. The factors balance in Kelly's favor

Where the trial court has not given factors the proper weight, it cannot have reached the correct balance. State v. Reimers, 310 Ga. App. 887, 893 (3) (714 SE2d 417) (2011) Here, the court wrongly weighed three of the four factors by misaligning some facts against Kelly and disregarding others that counted in his favor. Since we cannot rely on the court's path, we cannot trust the outcome. See Pickett at 680; Johnson at 898.

The facts in the record are clear. Had the trial court properly weighed all the facts behind the delay and the prejudice almost five years of incaration has imposed on Kelly, it would not have had the discretion to deny his plea. Furthermore, it would not continue to hold him without counsel, without bond, and without due process of law. For those reasons and more this court should grant the great writ and direct this court to release him.

## Conclusion

"The right to a Speedy trial is a great bulwark of freedom against the power of an overreaching government" Ruffin at 53(2). It recognizes that the state can only cast the shadow of suspicion for so long before a citizen can cast it off again — Regardless of what he may have done. That moment comes at different times, but every case has a point of no return. As far as Kelly is concerned, it has passed: the balance tips in his favor. Looking at the record, much of the nearly five-year delay in his case falls on the governments account, and in addition to the presumptive prejudice, Kelly has suffered financially and has lost any opportunity to mount any kind of defense on his own behalf. Since the right weighed factors would balance in his favor, Kelly asks this Honorable Court to grant the great writ and allow him a jury trial on his plea in bar.

Respectfully Submitted,
this 27th day of October 2013

Reginald Kelly

(30)

## Certificate of Service

I have this day served a copy of the foregoing pre-trial 28 U.S.C 2241 prisoner Habeas Corpus Petition on: Donald Barrow, warden; Washington State Prison, P.O. Box 206, Davisboro, GA. 31018-0206, by depositing said copy in the U.S. mail, this 27th day of October, 2013.

Respectfully Submitted

Reginald Kelly

this 27th day of October, 2013

## Verification

I hereby verify that matters alleged herein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true to the best of my knowledge. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Washington State Prison on this 27th day of October 2013

Reginald Kelly   GDC#563275
Washington State Prison
P.O. Box 206
Davisboro, GA. 31018-0206

Respectfully Submitted,

Reginald Kelly

Thirty-one
(31)